We're going to move to our last hearing of the day. This is Appeal 23-1196 Chavez v. Kijakazi. We'll extend our thanks for the patience of Mr. Zender and Ms. Hugo. Mr. Zender, I will recognize you first for argument on behalf of the appellant. Good afternoon. Please the court, my name is James Zender and I represent the appellate in this case, Ms. Kelly Chavez. I would like to respectfully request three minutes be reserved for rebuttal. The central issue in the case today is whether the administrative law judge's conclusion that there exists a significant number of jobs for the appellant is supported by substantial evidence. In the context of job number estimates, substantial evidence requires a vocational expert to cogently and thoroughly describe the estimation methodology which they employ. Appellant contends that in this case, the vocational expert's use or description of the methodology is not cogent or thorough and therefore requires remand. Mr. Zender, could I ask you, there's no challenges there to the findings about residual functional capacity here? Correct. Is there any disagreement about whether Ms. Chavez could do those three Correct. Given that, those are pretty broad categories, I would think. I'm not an expert, but even if the expert was off by a factor of two or four with the numbers that she testified about, how would you show on remand any different result? So I think the court, this very court in Brace v. Saul, addressed that exact line of reasoning where they said that an unreasonable, an un, I'm sorry, let me go back. The court in Brace v. Saul noted that if the testimony is unreliable, that is not fixed by large numbers being cited by vocational expert. Why not? Because the very core of the issue is that the testimony is unreliable. Therefore, we don't know the degree to which those numbers in the economy are actually represented. It could be more, it could be less, it could be significantly less. For cleaners, office helpers, and storage rental clerks? So I'd like to point the court to the Sauk v. Kijikazi case, which the government cited in their brief. In that case, the vocational expert testimony included specific reliance on their knowledge that their jobs that they cited were well represented in the national economy. The vocational expert did not give that testimony here, and it was not something that was relied upon by the ALA. If we remand, do you think you might hear that in the hearing? I mean, it certainly could be something that they say, but it's unknown. Moreover, there's no information on how the estimation methodology works, and so we were not able to cross-examine. I shouldn't say that. There's not a clear indication that it was reliable, and there are other things that may prove that these numbers were unreasonable. I'd like to take the time to review this court's recent decision and the Andrew Case decision in order to help illuminate some of the deficiencies in this case. That case was decided by this court back in August and was supplemented into the government in support of their position. The Case case. The Case case. Hopefully I don't say that and it would be confusing. But that decision fits squarely within some of the other cases decided by... Was Case precedential? It was non-precedential. I'm not sure why it was the subject of a 28-J letter. I understand you may want to respond to it. It's not precedential. Okay. Well, I'd still like to address some of the key distinguishing facts because they also arise in other cases cited by the government in support of their position. And notably, two major pieces. First, the level of information that was available to the ALJ from the vocational expert. And secondly, the reliance or the use of the vocational expert's knowledge and experience in direct relation to their job estimates that they gave. Turning to that first point, the vocational expert and the to cross-reference through the use of industry data how their SOC code, critical SOC code, DOT code matching occurred. That is wholly not present in this case where it was specifically asked how that DOT to SOC code translation occurred and the response was, I don't know. There was no industry approach noted. There was no information given on how that occurred. You can compare that to the cases of Hohmann and Fetting and SOC and Bruno, which were all cited by the government. And again, in those cases, you found significantly more information than what we have here, which is none. In Hohmann, the vocational expert noted that their knowledge and experience is what allowed them to determine the prevalence of DOT jobs within the SOC categories. They also walked through an example of how they arrived at the mail clerk position. In Fetting, they also gave an example of how the house cleaner's position was estimated, walking through how they went from SOC codes to DOT codes, and they relied on their knowledge and experience in crafting their methodology. In the Bruno case, a non-presidential one, but the facts also noted a specific reliance on the allocation in the industry method. They also, again, went through a specific example of the cleaner's position on how they arrived at that. In this case, we have no information at all on how that crucial SOC code to DOT code translation occurs, and that is fatal. Turning to the second distinguishing point from a lot of these cases, and specifically the Andrew Case one, the court repeatedly noted in the Andrew Case decision that the vocational expert relied on their knowledge and experience in verifying and vouching for the reliability of Job Browser Pro. Here, we have no reliance by the vocational expert on their own knowledge and experience in that regard, to either verify the numbers were actually accurate or in crafting their methodology. That fact, and that distinguishing fact is also notable in Fetting, Homan, and SOC, where the vocational expert specifically relied on 25 or 30 years of experience to verify and vouch for the reliability of the numbers that their estimation methodology was giving. Here, it was specifically asked what they relied upon in order to arrive at their job number estimates, and they stated solely Job Browser Pro. It sounds like you're asking for the precise statistical basis for the testimony. We are not seeking that exact specific statistical basis. Because we've never said that's a requirement. Correct, and we don't disagree with that. However, what is notable is this court has repeatedly, in almost every single case that they have determined in the last few years, noted that the SOC code DOT code mismatch in translation is the crucial piece of an estimation methodology. Notably, we specifically asked the vocational expert how that piece of the puzzle happened here, and the answer was I don't know. That response raises doubt as to the reliability of their testimony, their status as an expert, and we properly alerted the ALJ to this fact by an objection. And that then requires the ALJ to hold the vocational expert to account, seek a reason, and principled explanation for how this occurred, but that was not done. Thank you. We'll now move to Ms. Hugo on behalf of the agency. Good afternoon, your honors. May it please the court. Megan Hugo on behalf of Social Security Administration. Counsel has discussed that there is no information provided by the vocational expert, Ms. Holmes, about how she got job numbers particular to DOT code from the broader standard occupational code grouping, and he has said that is fatal in this case, and that is simply not supported by the court's recent case law in this area. The court has made very clear that this is a case-by-case inquiry, that it takes into account all features of the vocational expert's testimony and the record, and that it's a holistic review. And under that standard, Ms. Holmes' testimony crosses the low bar for substantial evidence in this case. The ALJ's explanation here was pretty terse. I'm sorry, it was pretty? Pretty sparse. In terms of overruling the objection? In terms of addressing the reliability of the vocational expert's testimony. Are you talking about her redirect questions to the vocational expert or her decision? Her ultimate ruling, her decision. Okay, well, that's an interesting point because I looked at the court's cases to see what has the court said that the ALJ is supposed to do in overruling these objections, and I did not see a standard laid out for what the ALJ is supposed to do in that arena. The agency's guidance says that the ALJ has to address the objections on the record. Of course, the ALJ did that here. You know, she gave reasons, including that I think that aligned with Supreme Court's precedent in FVSTAC, where it says that the court, or the ALJ, I'm sorry, should look at the entire record, and the ALJ said she did that here. I consider all the testimony on the record, I find it reliable. I don't think the court has ever said that the ALJ has to, you know, give a very fulsome explanation of why they found, you know, overruled the objections. The court has framed it in terms of, is the vocational expert's testimony reliable under all the facts of the case? And sometimes, of course, the court addresses what the ALJ said, but that's generally not been how the court has framed the issue, and I think, you know, if you're looking at is vocational expert's testimony itself substantial, and is it enough to support the Step 5 decision, I do think we have that here. You know, Ms. Holmes testified about the source of her job numbers. She said it was Bureau of Labor Statistics data from 2021. She said that she used a well-accepted method to analyze that data. That is not disputed. Council, you know, doesn't dispute that the Job Browser Pro is a well-accepted source. She did give a general explanation of how Job Browser Pro works. She confirmed it does use some weighting formula to go from the larger SOC grouping in order to provide job numbers specific to DOT code. The significance of that, of course, is that then it eliminates all job numbers from jobs that are inconsistent with the hypothetical question in terms of exertional and skill level. In addition to the program, you know, other indicia of reliability, she is highly qualified. She provided additional details about the nature of the jobs when questioned, and she identified jobs commonly found in the economy, as Judge Hamilton pointed out. You know, housekeeper, cleaner, office helper, storage rental clerk. What we don't have, as I understand it, is the vocational expert saying that I looked at these results from Job Browser Pro, and that's consistent with my experience in this field, and these numbers look reasonable to me. That's correct. Why shouldn't we expect at least that much? I think the court's cases have said, you know, once, of course, we're not arguing forfeiture here. They clearly made an objection. After the objection, the ALJ went back to the vocational expert and clarified, you know, that this is a well-accepted source. She said every person is a well-accepted source, that every vocational expert I know uses this, and that it's capable of breaking out jobs by DOT code. The court recently in Fedding said that basically the ALJ's duty of inquiry is over if the vocational expert's testimony doesn't give the ALJ any reason to find that the testimony is unreliable. So I know in a lot of the court's prior cases, the court has expected more from the ALJs because on the face of the testimony, there were obvious problems. So in Chavez 1, I'll say, you know, the first Chavez case, the vocational expert said, well, I use Job Browser Pro, but I also use occupational employment quarterly, which is equal distribution, and equal distribution gives more, and I think it's logical that I should give the bigger number essentially. And that's a red flag. Of course the ALJ should say, well, just because you think the bigger number is better, that makes no sense. Why do you have confidence in that? And so the court rightfully expected the ALJ to come back and say, press for, you know, a more detailed explanation. You know, similarly in Brace, when the vocational expert said, well, I used a weighting method. What is it? Well, it's based on information that I have. What information? Well, it's just a weighting and a re-weighting. I mean, that doesn't give you anything. And so the court, again, rightfully expected more probing. But again, in Fetting, the court said, as long as we don't have that situation where the expert's testimony looks unreliable on its face, the inquiry then ends. And so I think what's really important here is the vocational expert didn't just say, I don't know. We're looking for what a cogent and thorough explanation is. Right. What the case law seems to require. Yes. And I think the court recently explained that that as long as you understand the source of the numbers and the general process, and it doesn't look unreliable on its face under Fetting, that is sufficient. And I think here, another point that the court's cases support is that at least where a claimant is represented by counsel, the duty of inquiry of the ALJ is somewhat limited to the questions that counsel asks and the information that they elicit from the vocational experts. And here, the vocational expert was not asked for a general description. She was not asked, do you think this is reliable? She said, what is the weighting formula? And she said, well, I don't know it off the top of my head. But she brought the materials with her to the hearing that described the formula. This is a publicly available document. This isn't like in Brace where no one knows what the formula is. It was publicly available. And instead of saying, OK, well, what is it? Can you read it to me? He just said, oh, so you don't know it. And then he moved on. And that possibly was strategic choice. Whatever it was, that is how the record was left. So in not engaging with the vocational expert about the contents of that document, there is nothing in the record as it stands to show that the software is unreliable or that Ms. Holmes' use of the software in this case is unreliable. And so under the very flexible, substantial evidence standard, I would ask that the court affirm the district court's decision. Thank you, Ms. Hugo. Mr. Zender, we'll go back to you for rebuttal argument. The commissioner contends that there is no doubt or reasonable doubt raised in this line of questioning to cause the ALJ to stop and pause and go, hmm, there might be an issue. When your expert, who is the sole source of your entire conclusion that will be based on at the step five of this determination, states that they don't know how something works, that has to be a red flag. That raises doubt as to the reliability of their testimony. Why wasn't the burden, though, when she said she could, she had the mathematical information with her and no follow-up was asked, why wasn't the burden on you to ask that? Because it is not the claimant's responsibility to prove the reliability of the government's witness. We identified and raised doubt. We clearly objected and pointed, I mean, we weren't avoiding this, we pointed and said there's... But is it sufficient to raise doubt when you ask if she knows and she doesn't know at the top of her head but has it right there? So I would point to three other instances in the record where it was specifically asked by a claimant how something occurred or they wanted information from the vocational expert. And the vocational expert asked for a moment to review the record and then responded without further prompting or any other probing in order to get the answer that they were looking for. It's unclear why she didn't just read that into the record when it was asked. But nonetheless, we objected and we identified ALJ, here is your potential issue. At that point, the ALJ has to decide how are they going to hold the vocational expert to account for their numbers and how they are going to meet their burden of proof. It's not on claimant to cure the issue that they have identified or to rehabilitate the expert which the commissioner will rely upon at their step five decision. Thank you. Thank you, Mr. Zender. Thank you, Ms. Hugo. The case will be taken under advisement. That'll close our hearings for today.